O86JMASP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                          23 Cr. 99 (LJL)

DEVON MASON,

                                               Plea
              Defendant.

------------------------------x

                                    New York, N.Y.
                                    August 6, 2024
                                    3:00 p.m.

Before:

                        HON. LEWIS J. LIMAN,

                                      District Judge

                            APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
PATRICK RYAN MORONEY
ELIZABETH ESPINOSA
     Assistant United States Attorney

GETZ & BRAVERMAN
     Attorneys for Defendant
BY:  RAYMOND GAZER

O86JMASP

(Case called)

THE DEPUTY CLERK:  Starting with counsel for the government, please state your appearance for the record.

MR. MORONEY:  Good afternoon, your Honor.

Patrick Moroney and Elizabeth Espinosa for the government.

MR. GAZER:  Good afternoon, your Honor.

For Mr. Devon Mason, Raymond Gazer.

THE COURT:  Good afternoon, Mr. Gazer, and good afternoon, Mr. Mason.

Mr. Gazer, I understand you've got on application.

MR. GAZER:  Judge, at this time my client has authorized me to withdraw his previously entered plea of guilty and plead guilty pursuant to an agreement that we entered into with the government, and we'd ask your Honor to look over that agreement and, if your Honor is so inclined, to accept that agreement.

THE COURT:  And that provides, as I understand it, for your client to plead guilty to Count One of the indictment and the lesser-included offense to Count Seven of the indictment; is that correct?

MR. GAZER:  That's correct, your Honor.

THE COURT:  Okay.  Mr. Mason, I've been informed that you wish to plead guilty to Count One of the indictment and to the lesser-included offense to Count Seven of the indictment,

O86JMASP

23 Cr. 99; is that correct?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Sir, before I accept your guilty plea, I'm going to ask you certain questions so that I can establish to my satisfaction that you wish to plead guilty because you are guilty and not for some other reason, and also to establish that you know what you will be giving up by pleading guilty.

If you do not understand any of my questions at any time or if you want to consult with your lawyer at any time for any reason, just let me know, and I will give you as much time as you need to do that because it is essential that you understand each question before you answer so that we have a valid plea.

Do you understand that?

THE DEFENDANT:  I understand.

THE COURT:  Mr. Fishman, would you please swear in Mr. Mason.

(Defendant sworn)

THE COURT:  Okay.  Mr. Mason, you are now under oath, which means that if you answer any of my questions falsely, you may be prosecuted for the separate crime of perjury.

Do you understand that?

THE DEFENDANT:  Yes, I do.

THE COURT:  What is your full name, sir?

THE DEFENDANT:  Devon Mason.

O86JMASP

THE COURT:  How old are you?

THE DEFENDANT:  About to be 26, December.

THE COURT:  26?

THE DEFENDANT:  In December.

THE COURT:  In December.

How far did you go in school?

THE DEFENDANT:  Tenth grade.

THE COURT:  Where was that?

THE DEFENDANT:  Manhattan High, Seventh Avenue.

THE COURT:  Is that in Manhattan?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Have you ever been treated or hospitalized for any mental illness?

THE DEFENDANT:  No.

THE COURT:  Are you now or have you recently been under the care of a doctor or psychiatrist?

THE DEFENDANT:  No.

THE COURT:  Have you ever been treated or hospitalized for any type of addiction, including drug or alcohol addiction.

THE DEFENDANT:  Not really, but for me, I -- I was doing drugs, but it was never really, like, anything severe.

THE COURT:  Okay.  Is that affecting at all your ability to understand what's happening today?

THE DEFENDANT:  No.

THE COURT:  Have you taken any drugs, medicine, or

O86JMASP

pills or drunk any alcoholic beverages in the past two days?

THE DEFENDANT:  No.

THE COURT:  Is your mind clear today?

THE DEFENDANT:  Yes, it is.

THE COURT:  Do you understand what is happening today?

THE DEFENDANT:  Yes, I do.

THE COURT:  Mr. Gazer, do you have any doubt as to your client's competence to plead at this time?

MR. GAZER:  I do not, your Honor.

THE COURT:  Does the government have any doubt as to Mr. Mason's competence to plead at this time?

MR. MORONEY:  No, your Honor.

THE COURT:  On the basis of Mr. Mason's responses to my questions, my observations of his demeanor here in court, and the representations of counsel, I find that Mr. Mason is fully competent to enter an informed plea of guilty at this time.

Mr. Mason, have you received a copy of the indictment containing the charges against you?

THE DEFENDANT:  Yes.

THE COURT:  Did you read it?

THE DEFENDANT:  Yes.

THE COURT:  Have you had enough of a chance to discuss with your lawyer the charges to which you intend to plead guilty and any possible defenses to those charges?

THE DEFENDANT:  Yes.

THE COURT:  Are you sure about that?

THE DEFENDANT:  I'm positive.

THE COURT:  Okay.  Has your lawyer explained to you the consequences of entering a plea of guilty?

THE DEFENDANT:  Yes.

THE COURT:  Are you satisfied with your lawyer's representation?

THE DEFENDANT:  Yes.

THE COURT:  I'm now going to explain to you certain constitutional rights that you have.  These are rights that you will be giving up if you enter a guilty plea.  Please listen carefully to what I am about to say.  If you do not understand something, stop me, and your lawyer, or I will explain the matter more fully.

Under the Constitution and laws of the United States, you have a right to plead not guilty to the charges in the indictment.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you did plead not guilty, you would be entitled to a speedy and public trial by a jury on the charges contained in the indictment.

Do you understand that?

THE DEFENDANT:  Yes.

O86JMASP

THE COURT:  At a trial, you would be presumed to be innocent, and the government would be required to prove you guilty by competent evidence beyond a reasonable doubt before you could be found guilty.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  A jury of 12 people would have to agree unanimously that you were guilty, and you would not have to prove that you were innocent if you were to go to trial.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  At that trial and at every stage of your case, you would be entitled to be represented by a lawyer, and if you could not afford a lawyer, one would be appointed at public expense free of cost or any charge to you to represent you.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  During a trial, the witnesses for the government would have to come to court and testify in your presence.  Your lawyer could cross-examine the witnesses for the government, object to evidence offered by the government, and offer evidence on your own behalf if you so desired.  And you would have the right to have subpoenas issued or other process used to compel witnesses to testify in your defense.

O86JMASP

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  At a trial, although you would have the right to testify if you chose to do so, you would also have the right not to testify.  And if you decided not to testify, no one, including the jury, could draw any inference or suggestion of guilt from the fact that you did not testify.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Now, sir, have you had a full opportunity to discuss with your lawyer whether there was a basis to seek suppression of some or all of the evidence against you on the ground that your constitutional rights were violated?

(Counsel and defendant conferred)

THE DEFENDANT:  Oh, yes.  Yes.

THE COURT:  You understand that by pleading guilty, you are giving up your right to seek suppression of any evidence against you?

THE DEFENDANT:  Yes.

THE COURT:  If you were convicted at a trial, you would have the right to appeal that verdict.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Even now, as you are entering this plea, you have the right to change your mind and plead not guilty and

O86JMASP

go to trial on the charges contained in the indictment.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you plead guilty and if I accept your plea, you will give up your right to a trial and the other rights that I've just discussed, other than the right to a lawyer, which you have regardless of whether or not you plead guilty, but there will be no trial, and I will enter a judgment of guilty and sentence you on the basis of your plea after I've considered a presentence report and whatever submissions I get from your lawyer and the lawyer for the government.  There will be no trial and no appeal with respect to whether the government could use the evidence it has against you or with respect to whether you did or did not commit the crimes charged in Count One and Count Seven of the indictment.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you plead guilty, you will also give up your right not to incriminate yourself because I will ask you questions about what you did in order to satisfy myself that you are guilty as charged in Count One and Count Seven in the indictment, and you will have to admit and acknowledge your guilt to those counts.

Do you understand that?

THE DEFENDANT:  Yes.

O86JMASP

THE COURT:  Do you understand each and every one of these rights?

THE DEFENDANT:  Yes.

THE COURT:  And sir, are you willing to give up your right to a trial and the other rights that I've just discussed with you?

THE DEFENDANT:  Yes.

THE COURT:  Now let me discuss with you the nature of the charges to which you intend to plead guilty and the possible consequences of your guilty plea.  Do you understand that you're charged in Count One with participating in a racketeering conspiracy in violation of 18 U.S.C. Section 1962(d) from at least in or about 2017 up to and including February 2023?

And you're also charged in Count Seven with using, carrying, and possessing a firearm in furtherance of a crime of violence, which was brandished and discharged in violation of 18 U.S.C. Section 924(c)(1)(A)(i), (ii), and (iii) and Section 2, but the government will accept your guilty plea to the lesser-included offense of using, carrying, and possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. 924(c)(1)(I) and 2.

Do you understand all of that?

THE DEFENDANT:  Yes.

THE COURT:  Would the government please state the

O86JMASP

elements of the offenses in question.

MR. MORONEY:  Your Honor, to convict Mr. Mason of Count One, which is the racketeering conspiracy, the government would have to prove three elements:  First, there was an agreement among two or more people to participate in an enterprise that would affect interstate commerce through a pattern of racketeering activity; second, that Mr. Mason knowingly and intentionally joined that conspiracy; and, third, Mr. Mason agreed that either he or another member of the conspiracy would commit at least two acts of racketeering.

To convict Mr. Mason of the lesser-included offense to Count Seven, which is the firearm count, the government would also have to prove two elements:  First, Mr. Mason committed a crime of violence under federal law or he aided and abetted the commission of that offense — and here that crime of violence is the February 10, 2022 assault with a dangerous weapon and attempted murder in aid of racketeering, which is charged in Count Six of the indictment.

And the second element is that Mr. Mason knowingly used and carried a firearm during and in relation to that crime of violence or possessed it in furtherance of that crime of violence, or, if he did not possess a firearm, he aided and abetted the crime of violence with advance knowledge that another participant would be carrying a firearm, and that other participant did, in fact, carry a firearm.

O86JMASP

The government would also need to prove that venue is proper in the Southern District of New York.  Here, the racketeering enterprise, the DOA Sev Side gang, was based in the Bronx.  And the shooting underlying Count Seven took place in the Bronx in addition to other predicate acts that took place in the Bronx.

THE COURT:  Mr. Mason, were you able to follow what the government prosecutor said?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that if you were to go to trial, the government would have to prove all of those elements beyond a reasonable doubt?

THE DEFENDANT:  Yes.

THE COURT:  And would also have to prove venue by a preponderance of the evidence.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Now, I'm going to tell you about the maximum possible penalties for each of these crimes.

The "maximum" means the most that could possibly be imposed.  It does not mean that that is what you necessarily will receive.  But you have to understand that by pleading guilty, you are exposing yourself to the possibility of receiving any combination of punishments up to the maximum I'm about to describe.

O86JMASP

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  First, let me tell you about the possible restrictions on your liberty.  The maximum term of imprisonment in Count One is 20 years, which could be followed by up to three years of supervised release.  The maximum term of imprisonment for the lesser-included offense to the crime charged in Count Seven is life, which could be followed by up to five years of supervised release.  So the maximum term of imprisonment on Counts One and the lesser-included offense to Count Seven is life plus 20 years.

Supervised release means that you will be subject to supervision by the probation department.  There will be rules of supervised release that you'll have to follow.  And if you violate those rules, you can be returned to prison without a jury trial to serve additional time with no credit for the time you served in prison as a result of your sentence, even if the sentence I were to impose were the maximum term of imprisonment.  And you would also receive no credit for any time spent on post-release supervision.

Do you understand all of that?

THE DEFENDANT:  Yes.

THE COURT:  In addition to understanding the maximum punishments that can be imposed, you should also understand that there are mandatory minimum punishments that attach to one

O86JMASP

of the crimes to which you are pleading guilty.  That means that even if I wanted to, I would not be allowed to sentence you to less than the minimum.  In this case, the lesser-included offense to Count Seven carries a mandatory minimum punishment of five years of imprisonment, which must run consecutively to any other term of imprisonment that I impose.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  You should also understand, sir, that there is no parole in the federal system and that if you're sentenced to prison, you will not be released early on parole. There's a limited opportunity to earn credit for good behavior, but you'll have to serve at least 85 percent of the time you're sentenced to.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Second, in addition to these restrictions on your liberty, the maximum possible punishment also includes certain financial penalties.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Now, for each count to which you will be pleading, the maximum allowable fine is $250,000 or twice the gross pecuniary gain derived from the offense or twice the

O86JMASP

gross pecuniary loss to persons other than yourself, whichever is greater.  Thus, the maximum allowable fine for the two counts together is $500,000 or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons other than yourself, whichever is greater.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  In addition, I can order restitution to any person or entity injured as a result of your criminal conduct.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  The maximum financial sanction also includes forfeiture.  And in your plea agreement, you agree to forfeit to the United States a sum of money equal to the proceeds traceable to the commission of your offense.

Do you understand that?

(Counsel and defendant conferred)

THE DEFENDANT:  Yes, I understand.

THE COURT:  You understand that?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And finally, I must also order a mandatory special assessment of $100 on each of the counts for a total of $200.

Do you understand that?

O86JMASP

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that these are the possible maximum financial penalties?

THE DEFENDANT:  Yes.

THE COURT:  Are you a United States citizen?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that as a result of your guilty plea, you may lose certain valuable civil rights, to the extent that you have them or could otherwise obtain them now, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm?

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Are you serving any other sentence, state or federal, or being prosecuted in state court for any crime?

THE DEFENDANT:  No.

THE COURT:  Do you understand that if your lawyer or anyone else has attempted to predict for you what your sentence will be, that their prediction could be wrong?

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  No one — not your lawyer, not the government's lawyer, no one — can give you any assurance of what your sentence will be since I'm going to decide your

O86JMASP

sentence, and I'm not going to do that now.  I'm going to wait until I receive the presentence report prepared by the probation department, and until I receive submissions from your lawyer and the lawyer for the government.

At that point, I'm going to do my own independent calculation of the sentencing guidelines range, consider it and any possible departures from it, and also determine what a reasonable sentence is for you based on the sentencing factors contained at the statute found at 18 U.S.C. Section 3553(a).

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And have you discussed those issues with your lawyer?

THE DEFENDANT:  Yes.

THE COURT:  Even if your sentence is different from what your lawyer or anyone else has told you it might be, even if it's different from what you expect or from what's contained in the written plea agreement that you've entered into with the government, you will still be bound by your plea of guilty and will not be allowed to withdraw your guilty plea.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Now, I understand you have entered into a written plea agreement with the government; is that correct?

THE DEFENDANT:  Yes.

O86JMASP

THE COURT:  I have the original plea agreement in front of me.  It's dated July 16, 2024.  I'm going to mark it as Exhibit 1.  I'm giving it today's date, and I've initialed it.  In a moment, I'm going to ask my deputy to show it to you, and I'm going to ask you to take a look in particular at the last page of the agreement and tell me whether that's your signature that appears on it and whether you signed it on July 22 of 2024.  At the conclusion of today's proceedings, I'm going to give the plea agreement to the government for the government to keep for safekeeping.

Do you Exhibit 1, the plea agreement, in front of you?

THE DEFENDANT:  Yes.

THE COURT:  Take a look through it.  Is that your signature on the last page?

THE DEFENDANT:  Yes.

THE COURT:  Did you sign it on or about July 22?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Fishman, you may retrieve the plea agreement.  Did you read the plea agreement before you signed it?

THE DEFENDANT:  Yes.

THE COURT:  Did you discuss it with your lawyer before you signed it?

THE DEFENDANT:  Yes.

THE COURT:  Did you fully understand it before you

O86JMASP

signed it?

THE DEFENDANT:  Yes.

THE COURT:  Now I'm going to go through with you some of the provisions of the plea agreement to establish to my satisfaction that you understand its terms.

One of the features of your agreement with the government is that you've agreed on the guidelines range that applies in your case, something called the stipulated guidelines range.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Now, in your case, you've agreed that the guidelines range is 181 to 211 months of imprisonment with a mandatory minimum sentence of 60 months of imprisonment, which must run consecutively to any other term of imprisonment I impose.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And you've also agreed that the fine range is $35,000 to $350,000.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Now, that agreement is binding on you and it's binding on the government, but it is not binding on me.  I have my own obligation to determine the correct guidelines

O86JMASP

range and what the appropriate sentence is in your case.  I'm not saying that I will come up with a range different from what you've agreed to with the government, but if I do, then I will not let you withdraw your plea, even if the range I determine is higher than the one you've agreed to with the government.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Now, in your plea agreement, you've waived your right to appeal or otherwise challenge any sentence of imprisonment that is 211 months or below.

Do you understand that.

THE DEFENDANT:  Yes.

THE COURT:  In other words, if I sentence you to 211 months or anything less than 211 months, you would have no right to appeal or otherwise try to challenge that sentence.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  You've also waived your right to appeal or otherwise challenge any sentence that includes a term of supervised release that is up to the statutory maximum.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  You've also waived your right to appeal or otherwise challenge any condition of supervised release imposed by the Court for which you had notice and an opportunity to

O86JMASP

object.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  You've further waived your right to appeal or otherwise challenge any fine that is equal to or less than $350,000.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And next, you've waived your right to appeal or otherwise challenge the special assessments of $200.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  There is a *Brady* waiver in your plea agreement.  In your plea agreement, you waive any and all rights to withdraw your plea or to attack your conviction or your sentence, either on direct appeal or collaterally, on the ground that the government has failed to produce any discovery material to you that's not already been produced as of the date of the signing of your plea agreement.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Does the government have any other provisions of the plea agreement that they wish me to discuss with Mr. Mason?

MR. MORONEY:  No, your Honor.

O86JMASP

THE COURT:  Mr. Gazer, do you have any other provisions of the plea agreement that I should discuss with Mr. Mason?

MR. GAZER:  I just wanted to make certain, your Honor, that while we agreed on a stipulated guideline range that is applicable in this case, both Mr. Mason and the government are free to argue for a variance outside of that guideline range, pursuant to the agreement.

THE COURT:  And does the government agree with that?

MR. MORONEY:  Yes, your Honor.

THE COURT:  Okay.  And Mr. Mason, do you understand that while you've agreed on the guidelines range that applies in this case, both you and the government have the ability to argue for variances from that guidelines range?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Does this written plea agreement constitute your complete and total understanding of the entire agreement between you and the government?

THE DEFENDANT:  Yes.

THE COURT:  Other than what's written in this agreement, has anyone made any promises to you or offered you any inducement to plead guilty or to sign the agreement?

THE DEFENDANT:  No.

THE COURT:  Has anyone threatened you or forced you to plead guilty or to sign the plea agreement?

O86JMASP

THE DEFENDANT:  No.

THE COURT:  Has anyone made a promise to you as to what your sentence will be?

THE DEFENDANT:  No.

THE COURT:  All right.  What I'd like you to do now is tell me in your own words what it is that you did that makes you believe that you are guilty of the charges contained in Count One of the indictment and in Count Seven of the indictment.

(Counsel and defendant conferred)

THE DEFENDANT:  I was involved in two shootings, and somebody -- somebody I was with possessed a firearm.

THE COURT:  Okay.  And approximately when did those shootings take place?

THE DEFENDANT:  One on Webster Avenue and one on Roberto Clemente.

THE COURT:  I'm sorry.  What was the second one?

THE DEFENDANT:  Roberto Clemente, something River Park Towers.

THE COURT:  Were they both in the Bronx?

THE DEFENDANT:  Yes.

THE COURT:  And were you a member of Sev Side or DOA?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And did you participate in that gang understanding that it was engaged in a pattern of criminal

O86JMASP

activity?

THE DEFENDANT:  Yes.

THE COURT:  And were the shootings part of that pattern of criminal activity?

(Counsel and defendant conferred)

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Did you understand that what you were doing was wrong and illegal?

THE DEFENDANT:  Yes.

THE COURT:  Does the prosecutor have any additional questions they would like me to ask?

MR. MORONEY:  Your Honor, just as to the interstate commerce element, one of the other predicate acts we charged was the wire fraud.  So perhaps the Court could just confirm with Mr. Mason that he was aware that other members of DOA Sev Side were engaged in wire fraud.

THE COURT:  What was the nature of the wire fraud?

MR. MORONEY:  I think it was opening -- or it involved bank account fraud.  So it was sometimes depositing fake checks into bank accounts or opening fake bank accounts, things like that.

THE COURT:  Did you hear what the prosecutor said?

THE DEFENDANT:  I was not aware of none of that.

THE COURT:  Okay.

(Counsel and defendant conferred)

O86JMASP

THE COURT:  Do you want to cover with Mr. Gazer?

(Parties conferred)

MR. MORONEY:  Judge, I think we can proffer that at trial we would prove that other members of the gang were involved in those wire frauds that I discussed, and that we can also prove that or we would proffer that Mr. Mason agreed to be part of that enterprise and that he himself engaged in the two predicate acts.  I think for purposes of the statutory elements, that's enough — in other words, that there was an enterprise, that it was affecting interstate commerce, and that he agreed with others to engage in at least two shootings.

THE COURT:  In other words, what you're saying is that he doesn't need to know that the enterprise was engaged in activities that would affect interstate commerce in order to establish the elements of the offense; is that correct?

MR. MORONEY:  Correct.

THE COURT:  Mr. Gazer, do you agree with that?

MR. GAZER:  Yes, your Honor.

THE COURT:  Okay.  And do you dispute the government's proffer with respect to the interstate commerce element?

MR. GAZER:  No, your Honor.

THE COURT:  Okay.  Are there any other questions that the government would have me ask Mr. Mason?

MR. MORONEY:  No, your Honor.  Thank you.

THE COURT:  Mr. Gazer, let me ask you do you know of

any valid defense that would prevail at trial or any reason why your client should not be permitted to plead guilty?

MR. GAZER:  I do not, your Honor.

THE COURT:  Would the government please summarize for me what its evidence would be if the defendant were to go to trial.

MR. MORONEY:  Yes, your Honor.  At trial we'd prove the existence of the DOA Sev Side gang through social media and electronic communications, among other evidence.  With respect to Count Seven, the shooting and the firearm charge, there would be surveillance video establishing --

THE COURT:  That's the February 2022 shooting?

MR. MORONEY:  Correct, your Honor.

With respect to that, that shooting, there would be surveillance video establishing that the shooting took place, that the defendant was involved in that shooting, and social media evidence would establish that the person who was hit in that shooting was a member of a rival gang.

With respect to the fraud evidence I just discussed, there would also be bank records and electronic communications showing that members of DOA and Sev Side deposited fake checks. They also applied for fraudulent unemployment insurance using communications that went in and out of the State of New York.

THE COURT:  What would the evidence be with respect to the other shooting?

O86JMASP

MR. MORONEY:  The other shooting, same thing, your Honor.  There would be surveillance video as well as text message communications.

THE COURT:  That would show that the defendant was involved with the other shooting; is that correct?

MR. MORONEY:  Correct, your Honor.

THE COURT:  Okay.  Mr. Mason, did you hear what the prosecutor said?

THE DEFENDANT:  Yes.

THE COURT:  And were you involved in those two shootings that he referenced?

THE DEFENDANT:  Yes.

THE COURT:  And the February of 2022 shooting, that involved a member of a rival gang; is that correct?

THE DEFENDANT:  Yes.  Yes.

THE COURT:  Okay.  Mr. Gazer, do you agree there's a sufficient factual predicate for the guilty plea?

MR. GAZER:  Yes.

THE COURT:  Do you know of any reason I should not accept your client's plea of guilty?

MR. GAZER:  I do not.

THE COURT:  Does the government agree that there's a sufficient factual predicate for the guilty plea?

MR. MORONEY:  Yes, your Honor.

THE COURT:  And does the government know of any reason

O86JMASP

I should not accept the defendant's plea of guilty?

MR. MORONEY:  No, your Honor.

THE COURT:  Mr. Mason, how do you plead to Count One of the indictment charging you with racketeering conspiracy?

THE DEFENDANT:  Guilty.

THE COURT:  And how do you plead to the lesser-included offense of Count Seven of the indictment charging you with using, carrying, and possessing a firearm in furtherance of a crime of violence?

THE DEFENDANT:  Guilty.

THE COURT:  Okay.  Mr. Mason, because you acknowledge that you are, in fact, guilty as charged in Count One of the indictment and the lesser included offense of Count Seven, because I'm satisfied that you know of your rights, including your right to go to trial, and that you are aware of the consequences of your plea, including the sentence which may be imposed, and because I find that you are knowingly and voluntarily pleading guilty and knowingly and voluntarily entered into the plea agreement, I accept your guilty plea and I enter a judgment of guilty on Count One of the indictment and to the lesser-included offense of Count Seven of the indictment.

Now, the probation department will want to interview you in connection with the presentence report that it will prepare.  Mr. Gazer, I assume that you wish to be present for

O86JMASP

that interview?

MR. GAZER:  Yes, your Honor.

THE COURT:  I order that there be no interview unless counsel is present.

Mr. Mason, if you choose to speak to the probation department, make sure that everything that you say to them is truthful and accurate.  I will read the report carefully, and it is important to me in deciding what sentence to impose.  You and your lawyer have a right to examine the report and to comment on it at the time of sentencing.  I urge you to read it and discuss it with your lawyer before sentencing.  If there are any mistakes in it, point them out to your lawyer so that he can bring them to my attention before sentence.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  We need a date and time for sentencing. November 21 at 11:00 a.m., Mr. Gazer?

MR. GAZER:  Let me just double check.  That's fine.

THE COURT:  Okay.  Sentencing is set for November 21 at 11:00 a.m.  I direct the government to provide the probation officer with its factual statement within seven days.  Defense counsel must arrange within the next two weeks for the defendant to be interviewed by the probation department.

I want to refer counsel to my individual rules and practices for criminal cases available on the court's website,

O86JMASP

which contain rules regarding sentencing submissions.  In accordance with those rules, defense submissions are due two weeks before sentencing, and the government's submissions are due one week before sentencing.  And Mr. Mason will remain in custody pending sentencing.

Is there anything further from the government?

MR. MORONEY:  No, your Honor.  Thank you.

THE COURT:  Mr. Gazer, anything further from you?

MR. GAZER:  No, your Honor.

THE COURT:  Okay.  Mr. Mason, good luck to you.

And we're adjourned.  We'll see you at the time of sentencing.

(Adjourned)