

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, NY 10278*

February 18, 2025

**BY ECF**

The Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:    ***United States v. Devon Mason*, 23 Cr. 99 (LJL)**

Dear Judge Liman:

The Government submits this letter in connection with the sentencing of defendant Devon Mason, which is scheduled for February 25, 2025. For the reasons set forth below, the Government respectfully requests that the Court sentence the defendant consistent with the parties' agreed-upon Guidelines range of 181 to 211 months, and impose a sentence within that range.

## I.    Background

### A.    Factual Overview

From 2017 to 2023, Mason was a member of Sev Side—also known as DOA ("Dumping on Anyone" or "Dead on Arrival")—a violent street gang. (Presentence Investigation Report, dated December 20, 2024 ("PSR") ¶¶ 26, 31). During the time that Mason was a member of the gang, he helped support the gang financially through a fraud scheme that, as discussed below, was closely intertwined with the gang's acts of violence. (PSR ¶¶ 27, 52). And on November 10, 2021, and February 10, 2022, Mason participated in two shootings at rival gang members—in the second shooting, Mason himself fired the gun, striking a rival gang member in the leg. (PSR ¶¶ 54-56).

Sev Side is a street gang that operated primarily on 187th Street between Park Avenue and Southern Boulevard in the Bronx. (PSR ¶ 26). Members and associates of Sev Side had rivalries with several other street gangs, which often resulted in acts of violence, including murders and attempted murders. (PSR ¶ 28). In connection with their attacks on rival gang members, Sev Side members traveled together to rival gang territories to "spin the block," meaning to shoot at gang rivals and others located in the rival gang's territory. (PSR ¶ 28).

Hon. Lewis J. Liman                                                                                    Page 2
February 18, 2025

The leader of Sev Side was Kevin Perez, a/k/a "Kay Flock." On December 16, 2021, in connection with one of Sev Side's gang disputes, Perez murdered rival gang member Hwascar Hernandez in broad daylight. On numerous other occasions, members of Sev Side attempted to murder gang rivals by shooting at them.

Mason's Violence: On November 10, 2021, Mason drove co-defendants Perez and Ervin Beamon, along with another individual, to a particular building in a rival gang's territory in a grey sedan to commit a shooting. (PSR ¶ 54). When they arrived at the rival gang's building, Beamon stood up through the sunroof of the vehicle and began shooting at a group of men standing on the sidewalk outside of the building. (PSR ¶¶ 49). No one was injured during this shooting. Surveillance footage captured the group departing from 4646 Park Avenue—Sev Side's headquarters—in the car used in the shooting, and return to 4646 Park Avenue immediately after the shooting. (PSR ¶ 54).

On the afternoon of February 10, 2022, NYPD officers responded to the scene of a non-fatal shooting in the territory of the "Drillys" gang, a rival gang to Sev Side. (PSR ¶ 56). There, officers found an individual with a gunshot wound to the leg (the "victim"). (PSR ¶ 56). Surveillance video showed that the victim had walked up to a black four-door sedan (the "Sedan") that had been stopped at a red light, walked to the driver's side, walked away, and extended his arm as if he were shooting at the Sedan. (PSR ¶ 56). After doing so, the victim immediately turned to run away. An individual with a complexion consistent with MASON's reached out of the Sedan's rear passenger window and fired a shot in the direction of the victim—which shot struck the victim—before the Sedan drove away. (PSR ¶ 56). Near continuous video shows that the Sedan drove back to Sev Side's headquarters, 4646 Park Avenue. MASON (whose face is clearly identifiable in surveillance video) got out of the rear passenger side of the Sedan, where the shooter was sitting, consistent with him having shot the victim. (PSR ¶ 56).

Additional Criminal Conduct: One of Sev Side's main sources of income was bank fraud. (PSR ¶ 27). Members and associates of Sev Side engaged in bank fraud by obtaining fraudulent checks, depositing them into bank accounts of other individuals (typically with their consent), and withdrawing the funds before the victim banks recognized that the checks were fraudulent. (PSR ¶ 27). By using other people's bank accounts to accomplish the fraud, members of Sev Side were able to obscure their role in the scheme and avoid apprehension by authorities. Sev Side members recruited these other individuals to allow their bank accounts to be used as part of the scheme, typically through postings and messages on social media. (PSR ¶ 27). Mason participated in these fraud schemes by, among other things, posting on his social media accounts to recruit others for their bank accounts or CashApp accounts, or forwarding other Sev Side members' posts that sought individuals with established accounts at certain banks. Members of Sev Side deposited fraudulent checks into those accounts, knowing that the checks were more likely to clear if the account had been established for a longer period of time, or if the account was held at a particular bank. (PSR ¶ 52).

Some members of Sev Side are rap musicians—most notably, Perez, who goes by the name "Kay Flock" and is well known within the drill-rap scene for his music. (PSR ¶ 29). Perez and

other Sev Side members frequently rapped about their gang rivalries in songs and videos posted on various media platforms, including YouTube, Apple Music, and Soundcloud.  (PSR ¶ 28). These members also posted—on their own social media accounts, stories and live streams—about their gang rivalries and specific disputes with rival gang members. (PSR ¶ 28).

Following several gang-related shootings, some Sev Side members rapped about their violent acts in raps songs which they then posted on YouTube, Apple Music, and Soundcloud. (PSR ¶ 30).  The violence and rap music were closely linked: in the eyes of Sev Side members, committing a shooting made a subsequent rap song about that shooting more "authentic," and thereby raised the status or "clout" of the rapper boasting about the shooting.  (PSR ¶ 30).  In turn, the boasting in the rap songs fed a cycle of violence where the rival gangs retaliated against each other for perceived slights.  (PSR ¶ 30).

The acts of violence, and the rap songs boasting about them, were also closely related to the bank fraud scheme.  (PSR ¶ 30).  Sev Side members who raised their status—including their clout as a rapper—by committing shootings were able to use that status to recruit individuals for the bank fraud scheme.  (PSR ¶ 30).  For example, Perez, the most well-known rapper, could successfully recruit fans to provide their bank accounts for use in the scheme.  Some of the money that was made from the fraud scheme was then used to purchase studio time or apartment rentals for Sev Side members to record songs and music videos (in which they, again, boasted about committing acts of violence).  (PSR ¶ 30).

### B.  Relative Culpability

Relative to his codefendants, Mason's culpability falls below Perez but above the other defendants.  Perez is by far the most culpable: he was the leader of Sev Side and is the only defendant charged with murder.  By contrast, Castro and Smith are less culpable, since the Government has no evidence that they were personally involved in carrying out violence on behalf of the gang.  Mason, Johnson, and Beamon all carried out violence for Sev Side by shooting at rival gang members.  Mason participated in two shootings on behalf of Sev Side, while Johnson and Beamon each only participated in one.  And on one occasion, when Mason was the shooter, a rival gang member was shot in the leg.  (PSR ¶¶ 56).  Mason and Johnson's plea agreements both provided for Stipulated Guidelines Ranges of 181 to 211 months' imprisonment, whereas Beamon faced a Guidelines range of 157 to 181 months.  On October 30, 2024, this Court sentenced Beamon to 138 months' imprisonment.  On December 19, 2024, this Court sentenced Johnson to 150 months' imprisonment.

As the Government has noted in previous sentencing proceedings in this case, Iszayah Rowson and Michael Gant, who were members of Third Side—another street gang that at various times was allied with Sev Side—were separately charged with racketeering conspiracy and various acts of violence in a case before Judge Engelmayer (22 Cr. 310).  Third Side had many of the same gang rivals as Sev Side, and Rowson and Gant both participated in shootings with members of Sev Side against those rivals.  Rowson and Gant each pleaded guilty to one count of racketeering conspiracy and one count of using and carrying a firearm in furtherance of a crime of violence.

Rowson, the leader of Third Side, admitted to participating in two shootings in connection with his plea, while Gant, a known shooter for Third Side, admitted to participating in three shootings. Judge Engelmayer sentenced Rowson to a total of 168 months' imprisonment and sentenced Gant to a total of 192 months' imprisonment.

## II.    Discussion

### A.    Applicable Law

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)    to afford adequate deterrence to criminal conduct;
> (C)    to protect the public from further crimes of the defendant; and
> (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B.    A Sentence Within the Agreed-Upon Guidelines Range of 181 to 211 Months' Imprisonment Is Warranted

First, a substantial sentence is necessary to reflect the seriousness of Mason's crimes and the harm that he caused to the community. Mason was an active member of Sev Side, a violent street crew that engaged in multiple shootings against rival gangs. And Mason was not simply a bystander to Sev Side's violence: on November 11, 2021, and February 10, 2022, he participated in shootings with other gang members. Both shootings involved firing at rival gang members out

of a moving vehicle—an incredibly dangerous act, that not only risks serious injury or death to the rival gang members targeted, but anyone else who happened to be close by at the time of the shooting. Indeed, on February 10, 2022, Mason shot out of the rear window of a vehicle at a rival gang member, striking and injuring his rival. And Mason carried out that shooting in the middle of the afternoon on a busy New York City street, endangering the lives of countless New Yorkers just trying to go about their own business. Mason's actions did not only cause harm to that victim on that particular afternoon. By committing the shooting, Mason perpetuated the continuous and escalating cycle of violence between Sev Side and its rivals, leading, in turn, to more shootings.

While Mason's acts of violence are certainly the most egregious part of his involvement in Sev Side's racketeering acts, his participation in their fraud schemes were also serious crimes. While the financial loss from these fraud schemes is ultimately borne by the institution, individual check holders can also suffer as a result of the defendant's actions—those individuals may have been counting on the stolen checks to pay bills or buy food and other necessities, and many New Yorkers do not have the means to weather an unexpected financial shortfall.

A significant sentence will also deter Mason and—perhaps more importantly—similarly-situated individuals. Sev Side, and related gangs, recruit young men by glorifying a lifestyle of expensive clothes and respect-through-violence. That lifestyle can be tempting. By imposing a substantial term of incarceration, this Court can send a clear message about the consequences of joining a gang and carrying out violence as part of the gang. In Sev Side members' music, they frequently rap about who is in jail and who is suspected of cooperating with law enforcement. There is no question that members of Sev Side will hear of the sentences that Mason and his co-defendants receive.

## IV.    Conclusion

For the reasons set forth above, the Government submits that a sentence within the 181-to-211-month range agreed upon in the plea agreement would be fair and appropriate in this case.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney for the
Southern District of New York


By:    __/s/_____
Elizabeth Espinosa / Michael Herman /
Jim Ligtenberg / Ni Qian / Patrick Moroney
Assistant United States Attorneys
(212) 637-2216

cc:    Raymond Gazer, Esq. (by ECF)