P2PsMASs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                    New York, N.Y.

            v.                               23 CR 99 (LJL)

DEVON MASON,

               Defendant.

------------------------------x

                                             February 25, 2025
                                             12:00 p.m.

Before:

                    HON. LEWIS J. LIMAN,

                                        District Judge

                         APPEARANCES

MATTHEW PODOLSKY
     Acting United States Attorney for the
     Southern District of New York
BY:  JAMES A. LIGTENBERG
     Assistant United States Attorney

RAYMOND E. GAZER
     Attorney for Defendant

P2PsMASs

(Case called)

THE DEPUTY CLERK:  Starting with counsel for the government, please state your appearance for the record.

MR. LIGTENBERG:  Good afternoon, your Honor.  Jim Ligtenberg for the government.

THE COURT:  Good afternoon, Mr. Ligtenberg.

MR. GAZER:  Good afternoon, your Honor.

Raymond Gazer for Mr. Devon Mason, who is seated to my left.

THE COURT:  Good afternoon, Mr. Gazer and Mr. Mason.

All right.  We're here today for the sentencing of Mr. Mason.  On August 6, 2024, Mr. Mason appeared before me and pled guilty to Count One of indictment 23 CR 99, charging him with racketeering conspiracy, and to the lesser-included offense of Count Seven of the indictment, using and caring a firearm during and in relation to and possessing a firearm in furtherance of a crime of violence.  He did so pursuant to a plea agreement.  The plea agreement was dated July 16, 2024.

In preparation for today's proceedings, I have read the transcript of the plea proceedings and I have reviewed the plea agreement.  I've also reviewed and have in front of me the presentence report, which is dated October 30, 2024, and was revised on December 20, 2024, including the addendum and the recommendation to that report.

I've also received and reviewed the following

P2PsMASs

additional materials:  The defendant's submission dated February 11, 2025, which include letters from Mr. Mason's mother-in-law, the mother of his children, and from a friend; the government's sentencing submission dated February 18, 2025; and the defense submissions of yesterday attaching a letter from Mr. Mason's mother.

THE COURT:  Mr. Gazer, have you received each of these submissions?

MR. GAZER:  Yes, your Honor, I have.

THE COURT:  And are there any additional submissions of which I should be aware?

MR. GAZER:  There are not, your Honor.

THE COURT:  All right.  Mr. Ligtenberg, the same questions for you.

MR. LIGTENBERG:  Yes, I've read them.  No additional submissions, your Honor.

THE COURT:  Mr. Ligtenberg, are there any victims to address the court and have the victims been notified?

MR. LIGTENBERG:  There's been an attempt to notify, but no one will address the court.

THE COURT:  OK.  Let me turn to the presentence report.

Mr. Gazer, have you read the presentence report?

MR. GAZER:  Yes, I have, your Honor.

THE COURT:  And have you discussed it with your

P2PsMASs

client, Mr. Mason?

MR. GAZER:  I have, your Honor.

THE COURT:  Mr. Mason, have you read the presentence report?

THE DEFENDANT:  Yes, I have.

THE COURT:  Have you discussed it with your lawyer?

THE DEFENDANT:  Yes, I have.

THE COURT:  Have you had the opportunity to go over with him any errors in the report or anything else to be taken up with the court?

THE DEFENDANT:  Everything is fine.

THE COURT:  Everything's fine.

Have you gone over with him the presentence report?

THE DEFENDANT:  Yes, yes.

THE COURT:  You've discussed it with him?

THE DEFENDANT:  Yes, yes.

THE COURT:  Mr. Gazer, any matters to take up with the presentence report regarding the facts in the presentence report?

MR. GAZER:  No, your Honor.

THE COURT:  Mr. Ligtenberg, have you reviewed the presentence report?

MR. LIGTENBERG:  Yes, your Honor.

THE COURT:  And are there any objections to the factual recitations in the presentence report?

P2PsMASs

MR. LIGTENBERG:  No, your Honor.

THE COURT:  All right.  Hearing no objections, the court will adopt the factual recitations set forth in the presentence report.  The presentence report will be made a part of the record in this matter and placed under seal.  If an appeal is taken, counsel on appeal may have access to the sealed report without further application to the court.

Before we get to the sentencing guidelines, Mr. Gazer, I've got a couple of questions for you.

First of all, have you discussed with your client the conditions of supervised release recommended by probation, including the special conditions?

MR. GAZER:  Yes, I have.

THE COURT:  Has he read them?

MR. GAZER:  Yes, we have.  We have read them together.

THE COURT:  OK.  Do you anticipate making any objections to the special conditions?

MR. GAZER:  No objections.

THE COURT:  OK.  And in terms of how I intend to conduct this proceeding, it is my practice to reference the standard conditions of supervised release set forth in the presentence report without reading each of them out loud at the time that I impose sentence.  I do that based upon your representation that your client has read the conditions recommended by probation.

P2PsMASs

Do you have any objection to me proceeding in that fashion?

MR. GAZER:  I do not, your Honor.

THE COURT:  OK.  All right.  Let me then turn to the sentencing guidelines.

Although the court is no longer required to follow the sentencing guidelines, I am required to consider the applicable guidelines in imposing sentence, and in order to do so, it is essential that I accurately calculate the sentencing guidelines range.  In this case, the parties have reached an agreement with respect to the applicable guidelines.  The plea agreement calculates a 181 to 211 months of imprisonment with a mandatory minimum sentence of 60 months' imprisonment on Count Seven, which must run consecutively to any other term of imprisonment. The guidelines fine range is $35,000 to $350,000.

The probation agrees.  I, too, agree.  The guidelines range on Count One is 121 months to 151 months, based on a total offense level of 32 and a criminal history category of I. The guidelines range on Count Seven is the mandatory minimum of five years, which must be consecutive to any other term of imprisonment.

Combining the two, the total guidelines range is 181 months to 211 months with a mandatory minimum sentence of 60 months of imprisonment on Count Seven, which must run consecutively to any term of imprisonment imposed.

We'll pause for a moment.

The next subject I need to cover is departures, which is to say within the sentencing guidelines framework.  I find no departures are available as a matter of law.  I will address the question of variance after I hear from the parties and after I hear from Mr. Mason, if he wishes to address the court.

Does the government wish to be heard with respect to sentencing?

MR. LIGTENBERG:  Yes, your Honor.

THE COURT:  One thing I do want to make sure that you address is the relevant culpability of Mr. Mason to the other defendants who are charged from SevSide DOA, as well as the relative culpability to Mr. Mason to Mr. Rowson and Mr. Gant from Third Side, who were sentenced by Judge Engelmayer.

MR. LIGTENBERG:  Yes, your Honor.

So I'll try to be brief because I know your Honor is very familiar with this case and has sentenced a number of other defendants.  The government is asking for a sentence within the guidelines range of 181 to 211 months' imprisonment.  That's due primarily to the seriousness of the offense and the need to proceed the public and ensure adequate deterrence.

As the court saw from our submission, the defendant here was a long-time member of SevSide DOA, a violent gang.  He engaged in bank fraud in furtherance of the gang.  And I'll note, just for purposes of special conditions, that that

P2PsMASs

included the defendant using electronic devices in furtherance of the racketeering conspiracy, which justifies the inclusion of electronic devices within the scope of the search condition, the special condition in the PSR.

THE COURT:  Did that involve trying to obtain bank information to be used as part of the bank fraud?  Or tell me a little bit more about that.

MR. LIGTENBERG:  Yes, your Honor.  That involved posts on social media to recruit people to allow their bank accounts to be used, and then also the use of Cash App accounts and sort of electronic apps in order to accomplish the fraud itself.

So I think the inclusion of electronic devices within that search condition is amply justified by the record.  But, even more seriously, the defendant here engaged in two separate shootings in furtherance of the racketeering enterprise.  The first was a shooting at River Park Towers where the defendant was the driver.  He was not the shooter.  He was driving the car where effectively the defendant and others decided they were going to go spin a rival gang.  The defendant drove the car there, and while he drove another of his codefendants, Mr. Beaman stood up through the sunroof and fired shots at rival gang members.  Luckily, no one was hit.

In another incident, the defendant himself fired shots at a rival gang member.  The rival gang member was, it appears, either -- was being aggressive towards Mr. Mason as well, so

P2PsMASs

we'll acknowledge that.  But at the time that Mr. Mason shot that rival gang member, the rival going back member was running away and, in our estimation, did not pose any sort of ongoing threat to Mr. Mason.  And he shot that rival gang member in the leg and struck him.

So Mr. Mason, in addition to just involvement in the conspiracy and the bank fraud, was involved in two shootings. For that reason, in terms of relative culpability, as we laid out in our submission, we think he is obviously below Kevin Perez, who committed a murder and was the leader of the gang. So we would put him squarely at the top, Mr. Perez.  But I think our view is that Mr. Mason is the second most culpable, that he is --

THE COURT:  More culpable than Mr. Beaman?

MR. LIGTENBERG:  Yes, your Honor.

As the charges reflect, Mr. Beaman and Mr. Johnson were both held responsible for the involvement in one shooting, whereas Mr. Mason is being held responsible for his participation in two shootings.  So we thereby think that he is a more culpable than they are.

And if we broaden out and compare to Mr. Rowson and Mr. Gant, the Third Side members, Mr. Rowson would say he also committed two shootings.  So I think you could say, by that metric, he is on par with Mr. Rowson, who received a sentence of 168 months' imprisonment from Judge Engelmayer.

P2PsMASs

THE COURT:  My recollection is that Mr. Rowson, though, was the leader of Third Side.

MR. LIGTENBERG:  That is true.  So, perhaps, a notch below Mr. Rowson.  And then Mr. Gant who received 192 months' imprisonment was held responsible for three shootings.  So he had an additional shooting, and I think you could fairly say, for that reason, is more culpable than Mr. Mason.

THE COURT:  OK.

MR. LIGTENBERG:  So, for those reasons, the government requests a sentence of 181 to 211 months.

Happy to answer any questions the court has.

THE COURT:  I don't have questions about the culpability.  I do have questions when it comes time for the imposition of sentence, whether the government is seeking either forfeiture or restitution in connection with this case.

MR. LIGTENBERG:  The government is not.

THE COURT:  All right.  I'll hear from the defense, Mr. Gazer.

MR. GAZER:  Judge, I'll start by addressing what I see as the relevant culpability.

THE COURT:  Tell me also, I gather there are people who are associated with Mr. Mason in the gallery.

MR. GAZER:  That is correct.

We have the mother of his children, his wife, his brother.

P2PsMASs

FAMILY MEMBER:  Sister.

THE COURT:  Identify --

FAMILY MEMBER:  I'm his mother-in-law.

THE COURT:  Mother-in-law.

FAMILY MEMBER:  Cousin.  Brother-in-law.

MR. GAZER:  Brother-in-law, friend, brother-in-law.

THE COURT:  I appreciate their attendance here today.

Go ahead, Mr. Gazer.

MR. GAZER:  Judge, I do want to address the relative culpability.  Obviously, I'm not in the same position as the government, inasmuch as I don't know the intricate details of other cases, particularly Rowson and Gant.  They are obviously cases that weren't my client's.  They weren't codefendants on this case.

It's hard for me to assess what it is, their culpability is.  I will point out, your Honor, the government says that Gant was the leader of Third Side or one of the leaders.

THE COURT:  No, Rowson.

MR. GAZER:  Rowson.  Excuse me.  Again, I apologize.

And, obviously, I don't think Mr. Mason is a ranking member of SevSide, so that is a huge distinction I see.

With respect to Gant, the government describes him as a known shooter and attributed three shootings to him.  I don't think Mr. Mason was a known shooter.  I think what we have,

Judge -- and I never like to talk about these things in a way that would lead your Honor to believe I'm minimizing them, I'm certainly not -- but we have a shooting where he's not the shooter. He's the driver. it appears that Mr. Beaman is the shooter for one of them.

So I think with respect to that shooting, the relative culpability is different in the sense that Beaman is the actual shooter. Mr. Mason is the driver. With respect --

THE COURT: How much significance should I attribute to that?

It seems to me a fair inference for me to draw that when he's driving the car to the rival gang location and somebody else stands up within the car to do the shooting, that it's reasonably foreseeable to Mr. Mason that the reason why they are going to the rival gang area is to do a shooting.

MR. GAZER: Well, certainly, Judge, he's pled guilty and he stands by his plea. It's not -- we're not saying he didn't know, and this is a nonissue. Obviously, there are degrees of culpability. And as I put in my sentencing submission, even abhorrent conduct, there are different degrees.

So I think it's something your Honor should put in your Honor calculus. I don't know how much it is worth to your Honor. It means something to me, Judge. I don't know if I can articulate it to you, but certainly, as a lawyer, I look at the

P2PsMASs

shooter in a different way than I look at someone else.  And it's not to say that's a defense.  And, again, he's not disavowing his plea agreement or allocution in front of your Honor.  But there are obviously distinctions to be made.

With respect to the February shooting, I think in that shooting he's being shot at.  And while that is not a defense, we don't say it's justification or self-defense, the government's position was that the victim of that shooting was acting aggressive to him and then he was fleeing.  My view of the video -- and I haven't spoken with the victim, so I don't know -- I would imagine if I had spoken to the victim, he wouldn't be honest with me.  My view of the video is, he is running away while turning and pointing and firing a gun at Mr. Mason's direction.

Again, it's not a defense, Judge.  He's pled guilty to the crime.  There are intricacies, as your Honor knows, about justification and self-defense.  But certainly I see that as a mitigating circumstance.  Another thing I would ask your Honor respectfully to put in your calculus when imposing what I think is a fair sentence.

So it's not as if these are two -- well, let me stick to the February shooting.

It's not as if that was a planned act of violence where Mr. Mason set out on that day to shoot this person.  This person shot at him.  Arguably, the inference I draw from that

is that this person targeted Mr. Mason.  It's unfortunate that he was in a position to have a firearm and there was gunfire exchanged.  But as I put in my sentencing submission, we are sorry that this person was injured and we're grateful that he's made a full recovery.

But the inference is that when you fire a gun at someone's direction, particularly someone who you allege to be a rival gang member, the consequences that may happen to you could be grave.  So, it's almost as if he assumed the risk that something horrible would happen.

Again, not a defense, your Honor, but something that I think your Honor should put in the sentencing calculus. Respectfully, of course.

What I would say, Judge, is while Nicholas Johnson was charged with one shooting in this federal court, there is obviously a Bronx shooting.  I don't know whether or not the government used that as relevant conduct or your Honor used that as relevant conduct.

I don't know what happened to that Bronx case.  I endeavored to look in the clerk's records before today to see. It's not there.  There's a myriad of reasons why it may not be there.  I'm not going to speculate, but I'm unable to ascertain what his total sentence was, if you include that Bronx shooting.  I don't know if your Honor took that into account.

With respect to Mr. Beaman, he's also alleged to have

P2PsMASs

robbed somebody. Yes, I want to make sure I'm speaking about the right people. He's also got unprovoked robbery. My client's not. Mr. Mason is not. There are two shootings. Again, I explained to you what I think is the import of those shootings, but there wasn't random acts of violence.

I also think the fraud activity was de minimus. Culpable, he has obviously pled guilty to it, but de minimis in relation to the grand scheme of things. So that is my sort of relative culpability argument to your Honor.

I left out Mr. Perez, the lead defendant, because he's obviously a homicide, and I'm not going to make any inferences one way or another towards that. But he certainly is the lead defendant.

THE COURT: And if he's convicted, I think that the charges that he faces would carry life, mandatory life imprisonment. So it's not exactly the best comparison for you. It is a matter that is of great fortune for your client, as well as obviously for the victim, that there was no death connected to the shootings.

MR. GAZER: Certainly we, meaning Mr. Mason and I, agree 100 percent with your Honor. And, again, nothing I say here minimizes or blames the victim, except as to say when you fire a gun at somebody, there is a reasonable possibility that somebody may fire back. That is just the unfortunate circumstance when you involve yourself in this gang culture.

P2PsMASs

These things tend to happen, and that is why it's best to avoid that type of behavior in the first instance.

Judge, with respect to the other factors, I set forth a lot in my sentencing submission. Certainly my client has no lengthy criminal record. He had a youthful offender adjudication in state court, but there is no criminal history. Certainly no violent criminal history up until the current charges before your Honor.

He has successfully participated in drug treatment programs through Promesa. More than that, Judge, if you look --

THE COURT: I did notice that, and that's a positive.

MR. GAZER: He was forced -- and when I say forced, nobody made him do this -- but he was forced through the economic circumstances to start supporting his family at the tender age of eight years old. And that is something that he endeavored to do through legitimate means up to his incarceration. I spoke about him selling candy and selling water.

So this is not an individual who doesn't know and is unable to take responsibility. He's had to take responsibility at a very young age, if I may be frank, younger than a child should ever have to support anyone. But he has done that. And, again, as I pointed out, there is a lack of father figure in his life, and he gravitated to the wrong people on the

P2PsMASs

streets.  And it's sort of something that happens and you get caught up in trying to fit in and trying to gain some status and thinking that these people are your role models when, in fact, if they are a role model, they are a negative role model. They are not positive at all.

So that is, obviously, the life that he led.  He has three children, one of whom was born while he was incarcerated, whom he's never had the ability to see except for in jailhouse visits.  He is anxious, Judge, to put this behind him as soon as possible.  He's anxious to get back to his three daughters.

By all accounts, if you look at the letters and you look at what I put in my sentencing submission based on my investigation, he's a doting father, supportive of his three children.  This conduct is aberrant.  We're not here to say, overlook it, your Honor.  We are here to say establish or impose a fair and just sentence that is commensurate with his behavior.  We talked a lot about relative culpability and that obviously is a laudable goal.  However, everyone stands before you an individual.  And when you sentenced them, judge, I know you sentence them as such.  I will take into account relative culpability.  It has a place.  It's but one factor and not the end all, be all.

Beyond that, Judge, he's been incarcerated first at Essex County and now at Hudson County.  Essex County was horrible.  He was locked down.  He was provided 15 minutes a

P2PsMASs

day to shower and use the phone.  Things have gotten better at Hudson County, but he had a dental issue, and I notice he's lost a lot of weight.  That is visible.

Both his wisdom teeth became inflected.  It took several months, six months, before he was able to see a dentist on the, quote-unquote, outside.  Then he had to have those teeth excised and he was given nothing for the pain.  And by the time it was addressed appropriately, he had developed a bilateral infection, and that's dangerous.  I mean, a tooth infection could spread, right.  It's not something to be taken lightly.  Fortunately, it seems that it was, and it wasn't seen as something as urgent as it should have been, Judge.

So you have a man who has committed these wrongs.  I showed your Honor what I think the context is of them.  I think a fair and just sentence would be 120 months, a ten-year sentence.  Should your Honor look at the relative culpability, I honestly think that he fares better than Mr. Beaman and Mr. Johnson for the reasons that I stated.

It's hard for me, again, to compare Mr. Rowson and Gant, but I did provide you what I think is some contrast between the two of them vis-a-vis their leadership role and level of shootings they are alleged to have participated in. But beyond that, Judge, he's lived, up until this point, a relative law-abiding life.

He has shown that he can rehabilitate himself before

P2PsMASs

when he went to Promesa and has always shown, no matter what circumstances he finds himself in, as a family man dedicated to not just his children, but also his mother and his siblings.

So, Judge, I'm going to ask you to impose a sentence, that sentence what I see as necessary, but not more than necessary to accomplish the goals set forth in United States Code.

Thank you.

THE COURT:  Thank you, Mr. Gazer.

Mr. Ligtenberg, anything further from you?

MR. LIGTENBERG:  No, your Honor, but happy to answer any questions.

THE COURT:  Mr. Mason, you're not required to address the court, but if you would like to do so, now would be the time.

THE DEFENDANT:  I got a letter for you from me.  I would --

THE COURT:  Try to keep your voice up.

THE DEFENDANT:  I have a letter for you.

THE COURT:  OK.

THE DEFENDANT:  Good afternoon.  I hope your day is going good.  By the time I've been locked in there, I just been thinking, like, this is not me.  Right.  This is not the person I want to be for me.  I'm trying to get back to my family, support them the best way I could, like I had been doing, you

P2PsMASs

know what I mean.

I'm asking can you please give me my mandatory minimum or somewhere around there so I can fix my life and get back to my family.  Just know, I understand and I acknowledge all the wrong things I done did.  Please take into consideration that I'm trying to come back to my family.  I want better.  I want to be a better man.  I want to be a better leader.  I'm thinking clearer.  My main goal is peace, being with my family, and staying out of trouble.

THE COURT:  Thank you, sir.

Mr. Gazer, what is your client's aspirations for after he's released?

MR. GAZER:  He's talked about going to trade school or, if that's possible in prison, he's talked about learning a trade.  He's talked about focusing on both construction and technology.

Is that right, Mr. Mason?

THE DEFENDANT:  Yes, it is.

MR. GAZER:  He strikes me as --

THE COURT:  I'll permit him to answer the question if you want him to.

MR. GAZER:  Sure, Judge.

THE DEFENDANT:  Yes.

I'm trying to, um, do construction or sanitation, anything that fit the criteria for me to really establish my

P2PsMASs

goals to be better and achieve what I got going on.

THE COURT:  All right.  Thank you both.

I'm going to take a short recess and collect my thoughts and I'll be back on the bench.

(Recess)

Mr. Ligtenberg, is there any reason why sentence should not now be imposed?

MR. LIGTENBERG:  No, your Honor.

THE COURT:  Mr. Gazer, is there any reason why sentence should not now be imposed?

MR. GAZER:  There is not, your Honor.

THE COURT:  OK.  As I've stated, the guidelines range applicable to this case is 181 months to 211 months, with a mandatory minimum sentence of 60 months of imprisonment on Count Seven, which must run consecutively to any other term of imprisonment imposed.

Under the Supreme Court's decision in the *Booker* case and the cases that have followed it, the guidelines range is only one factor that the court must consider in imposing sentence.  The court also considers the other factors set forth at 18 U.S.C. Section 3553(a).  These include the nature and circumstances of the offense, and the characteristics of the defendant and the need for the sentence imposed to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to provide

P2PsMASs

adequate deterrence to criminal conduct; (C) to protect the defendant, to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

The court is also required to consider the kinds of sentences available and the need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct and who have similar records.

The court importantly is also required to follow the parsimony principle, that is the principle established by congress that the sentences be no harsher or no longer than absolutely necessary to serve the purposes of sentencing I've just mentioned.

I've given much thought to the sentence I'm about to pronounce. I find that it is necessary, but not greater -- I find that it is sufficient but not greater than necessary to satisfy the purposes of sentencing I've just mentioned.

I cannot follow Mr. Gazer's request in this case and impose a sentence of 120 months. That would not be, while it's long, that would not be enough to recognize the gravity of Mr. Mason's crime, to achieve proportionality, or to protect the public.

At the same time, however, I'm not going to follow the recommendations of probation and the government and impose a

P2PsMASs

sentence of 181 months.  That sentence would not be consistent with the principles of parsimony.  It would be unduly harsh. It would be greater than necessary in my view to serve the purposes of sentencing.

Let me go through my thoughts.  Mr. Mason stands convicted of committing very serious crimes.  For six years, from 2017 to 2022, he was a member of a violent criminal organization that, along with other gangs, terrorized the Bronx.  While there are two particular shootings that I'm focusing on here, those shootings did not occur in isolation, they occurred as part of long-term criminal activity.

I also consider the fact that Mr. Mason participated in bank fraud with other members of SevSide DOA by recruiting others for their bank accounts or Cash App accounts.

Now, with respect to the shootings, Mr. Mason participated in two shootings, both in connection with his gang activities.  On November 10, 2021, he and two members of the gang drove to the area of the Drilly in the Bronx, New York, and shot at a group of men from in a BMW before returning to SevSide headquarters.  Mr. Mason himself was not the shooter, that was Mr. Beaman.  But I don't ascribe all that much significance to the fact that Mr. Mason did not pull the trigger and was not the person who stood up from within the car and did the shooting.  It's apparent from the record that the purpose of traveling to the rival gang territory was for there

to be a shooting, and that shooting was reasonably foreseeable to Mr. Mason. He's appropriately held accountable for it.

On February 10, 2022, he and others traveled to the Drilly territory and he fired a gun at his victim, hitting the victim in the leg. In this circumstance, Mr. Mason was the shooter. Now, there are mitigating circumstances in connection with this shooting. I'm persuaded by Mr. Gazer's argument that the evidence does not support that Mr. Mason in this case set out to shoot his victim. It was more circumstantial. But the shooting was not justified and cannot be excused on that basis. It was one in which the victim was lucky only to be hit in the leg. Again, there could have been even more serious damage done.

Moreover, the harm caused by that activity, in general, Mr. Mason, by your gang activity, extended beyond the immediate victims and extended beyond the other members of rival gangs who themselves were frequently perpetrators of criminal activity. The victims include the members of the community in which you grew up, the members of the people in the Bronx, many of whom are just trying, like everybody does, to lead a law-abiding life, parents to raise their children free of crime, for a better life, and they become victims of gang activity.

So, too, do the young people who are induced by gang culture and to join the gangs, and I can't blind myself to

P2PsMASs

that.  I do take that into account in thinking about what the appropriate sentence is in your case.  It's appropriate and necessary in my mind to send a message to the community, first, that this kind of conduct, when it's engaged in, will be met with serious punishment, that that justice is being served in that respect.  And it's also important to send a message to those who might be tempted to engage in that activity, that it's not cost free, that there are consequences that follow from that activity.

That does turn, in my mind, make me turn to the question of general deterrence.  It is reasonable to presume, and I do presume, that the length of a sentence does have some relationship to its deterrent effect.  A balance, of course, is necessary.  If the sentence is too light, then the wrong message is sent that the law enforcement and the courts and the society do not treat the crime as serious as it is.  It also is true if the sentence is too harsh, the wrong message also is sent.  A sentence has to be consistent with notions of justice.

In my mind, while it's impossible to figure out what the appropriate length of sentence is, to serve the purposes of general deterrence, I do think that a sentence in the range that is higher than what Mr. Gazer recommended, but also lower than what the government has urged, achieves that balance.

I also consider accordingly the interest of proportionality, that like people are treated alike.  That is

P2PsMASs

the essence of law in a sentence imposed in accordance with law. It would not be appropriate in my view for you to receive a sentence lesser than that imposed on Mr. Beaman or Mr. Smith, who were involved in one shooting each. By the same token, however, it also would not be appropriate, in my mind, for you to receive a sentence equivalent to that imposed on Mr. Rowson, who was a gang leader. You did not have the same position in SevSide DOA as Mr. Rowson did, and I'm not going to sentence you on the basis that you are equivalent to Mr. Rowson. The facts wouldn't support that.

I have considered the factors of specific deterrence and incapacitation. Frankly, they do not drive my sentence in this case. You have one prior offense, which was a felony, when you were convicted -- which you committed when you were very young, when you were 16 years old. You did not serve any time in prison for that. You will receive a lesser sentence than if you had a history of being incarcerated and then came out and committed a crime again.

There is reason to believe or to hope that, from the term of imprisonment that I will impose, you will learn your lesson and not engage in gang activity again. And I heard what you said, sir, and I credit your statement that you really do want to turn your life around and return to your family. My sentence is intended to allow you to do that as soon as, in my judgment, I think justice permits.

P2PsMASs

I cannot ignore, however, that you engaged in serious criminal activity over a lengthy period of time, and that does bear on the questions of specific deterrence and incapacitation.  There are numerous mitigating factors.  Some of them actually are represented here.  Many of them are represented here by the people who are in the gallery.  It's apparent to me that you have a loving and supportive family.  That is very relevant because, to me, that suggests hope that you really have the ability to turn your life around and that when you do turn your life around, you'll have the support system in place to make sure that you don't resort to criminal activity.

You have three young children.  You've been in a stable long-term relationship, and that speaks well of you, including your partner's presence here today.  I also do take into account the points that Mr. Gazer has mentioned, that life was not at all easy for you growing up, you grew up without a significant father figure, and you had to help provide support for your family, and your mother was responsible for nine children and your family struggled financially.

In the end, I credit that you joined the gang because it gave you a sense of belonging that you didn't have.  But I also credit the notion that because that was a reason for you joining the gang, the notion that you have a supportive network here today means that you don't need to be a member of a gang,

P2PsMASs

and you will not be a member of a gang, a violent gang, after you serve your time in prison.

Finally, I have taken note to a point made by Mr. Gazer about you attending Promesa and you freeing yourself of drugs for over five gears. The court is not ignorant to the fact that drug addiction is a disease. It's not something that people willingly become afflicted with. They take drugs maybe willingly, but it becomes a disease, and it is not a disease that is easy to address. The fact that you took the steps to address it and you were successful means that you have got every ability within yourself to turn your life around and to become a law-abiding member of society, a father to your children, and a partner to your spouse.

I'll now state the sentence I intend to impose. The attorneys will have a final opportunity to make legal objections before the sentence is finally imposed.

Would you please rise, sir.

After assessing the particular facts of this case and the factors under Section 3553(a), including the sentencing guidelines, it is the judgment of the court that you are to serve an aggregate sentence of 156 months of imprisonment, 96 months on Count One and 60 months on Count Seven, which will run consecutive to the term of imprisonment on Count One, to be followed by three years of supervised release on each of Counts One and Seven to run concurrently.

P2PsMASs

As to supervised release, the standard conditions of supervised release as set forth at pages 35 to 37 of the presentence report shall apply.  In addition, you will be subject to the following mandatory conditions set forth at page 35 of the presentence report.

You shall not commit another federal, state, or local crime;

You shall not illegally possess a controlled substance;

You shall not possess a firearm or destructive device;

You must refrain from any unlawful use of a controlled substance;

You must submit to one drug test within 15 days of release from imprisonment, and at least two periodic drug tests thereafter, as determined by the court;

Finally, you must cooperate in the collection of DNA as directed by the probation officer.

I'm also imposing the following special conditions, which are set forth at page 37 of the presentence report.

Mr. Gazer, I'm prepared to read the conditions in full.  I'm also prepared to summarize them.

Have you gone over the special conditions with Mr. Mason?

MR. GAZER:  We have, Judge.  I think a summary would be sufficient.

P2PsMASs

THE COURT:  OK.  All right.  So I am imposing the search condition that you must submit yourself to a search of your person, property, residence, office, vehicle, papers, computer, cell phone, and other devices or media used for electronic communications, data storage, cloud storage, or network storage.  That condition is appropriate and the least restrictive necessary to achieve the purposes of sentencing in supervised release in that your crime involved the use of electronic devices and media, and in order to assist the probation department in terms of your reintegration into society and to protect society.

I'm also directing that you participate in an outpatient treatment program approved by the U.S. Probation office, which program may include testing to determine whether you have reverted to using drugs or alcohol.  That condition is appropriate given your history of using illegal drugs.  I recognize, as I indicated earlier, that you were successful with Promesa.  I also recognize that after a period of success, you then reverted to using illegal substances.  So I am imposing it for that reason as well.

I'm also imposing, is there any objection to me imposing a gang condition, Mr. Ligtenberg?

MR. LIGTENBERG:  No, your Honor.  We think that would be appropriate.

THE COURT:  Mr. Gazer, any objection to me imposing a

P2PsMASs

condition that Mr. Mason not associate in any way with gang members, particularly members of SevSide DOA, or frequent the area around 4646 Park Avenue in the Bronx, known to be the headquarters of SevSide DOA?

MR. GAZER:  No objection, Judge.

THE COURT:  OK.  So, I'm imposing the special condition that Mr. Mason not associate or interact in any way, including through social media, websites, with any gang members or associates, particularly members and associates of SevSide DOA, or frequent the neighborhood or turf known to be controlled by SevSide DOA, specifically the area around 4646 Park Avenue in the Bronx.

As I mentioned, I determine each of these conditions as reasonably related to a statutory purpose of sentencing and imposes the least restriction appropriate on the defendant's liberty.  The gang condition is clearly appropriate to the reintegration of Mr. Mason into society given his long-term involvement with SevSide DOA and their criminal activities.

I'm not imposing a fine based on the inability to pay. Restitution is not applicable in this case.  I am imposing a mandatory special assessment of $200, which shall be due immediately.  Forfeiture is not being sought in this case.

Mr. Gazer, do you know of any legal reason why this sentence should not be imposed as stated?

MR. GAZER:  Judge.  I do not.  However, if the court

would allow me to be heard on the special condition relating to the search?

THE COURT:  OK.

MR. GAZER:  As I heard your Honor say it, he's required to submit to a search, but is there a reasonable suspicion requirement that he has violated his condition of the supervised release or committed a new crime, that is what the probation --

THE COURT:  There is.  I intend to impose that that special condition, as recommended by probation, which means that the probation officer may conduct the search only when there is reasonable suspicion that Mr. Mason has violated a condition of supervision or committed a new crime, and that the areas to be searched contain evidence of the violation or crime and the search also must be conducted by a U.S. Probation officer, although other law enforcement officers may assist the probation officer.

Furthermore, this search must be conducted at a reasonable time and in a reasonable manner.  Like other conditions of supervised release, the failure to submit to a search here may be grounds for revocation of the release.  And Mr. Mason must warn other occupants of his premises that the premises may be subject to searches pursuant to this condition.

MR. GAZER:  Thank you, your Honor.

THE COURT:  Any other objections to or reason why this

P2PsMASs

sentence should not be imposed as stated?

MR. GAZER:  No objection, Judge.

THE COURT:  Mr. Ligtenberg?

MR. LIGTENBERG:  No, your Honor.

THE COURT:  Sentence as stated is imposed.

You may be seated.

Mr. Gazer, is there any request for a recommendation with respect to designation?

MR. GAZER:  Yes, Judge.

I would ask that your Honor recommend to the Bureau of Prisons to designate Mr. Mason to a facility within a 100-mile radius of the City of New York to the extent practicable.

THE COURT:  I'll make that recommendation.

Are there open counts, Mr. Ligtenberg?

MR. LIGTENBERG:  Yes, your Honor.  The government moves to dismiss the open counts.

THE COURT:  That motion is granted.

Mr. Mason, let me advise you that, to the extent that you have not given up your right to appeal your conviction and sentence through your plea of guilty, any agreement you entered into with the government in connection with that plea, you have the right to appeal your conviction and your sentence.  If you are unable to pay the cost of an appeal, you may apply for leave to appeal *in forma pauperis*.  The notice of appeal must be filed within 14 days of the judgment of conviction.  And

P2PsMASs

Mr. Mason is remanded to the custody of the United States Marshal.

Finally, I would like to acknowledge, once again, the members of the family who are here and would like to request the marshals, if it's possible, for Mr. Mason to just say hello from a distance to the members of his family. The court would appreciate that. It needs to be at a distance given the marshal's security protocols, but that would be very much appreciated by the court.

I meant what I said, particularly appreciate the mother sending the letter late yesterday. I did read all of the materials and they were meaningful, as is your presence here today. It's not a short sentence, but it is a sentence that Mr. Mason is intended to permit you to have a life afterwards, a life with your children and with your significant other. My hope is that you take advantage of your time while incarcerated, put yourself in a position where you are able to make a real contribution to society, that this is the last time you'll ever see a criminal court.

Thank you all for being here today.

We're adjourned.

*    *    *